√ ORIGINAL

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

2011 APR 13 PM 1:08

DEPUTY CLERK _____

| | | |
|---|---|---|
| **CASSIE BENHAM,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. _____** |
| | § | |
| **BAYER CORPORATION,** | § | |
| **BAYER HEALTHCARE, LLC,** | § | |
| **BAYER PHARMACEUTICALS** | § | |
| **CORPORATION, BAYER** | § | |
| **HEALTHCARE** | § | **3-11CV0753-N** |
| **PHARMACEUTICALS, INC., BERLEX** | § | |
| **INC., BAYER SCHERING PHARMA** | § | |
| **AG, and BAYER AG,** | § | |
| | § | |
| **Defendants.** | § | |

# 48482

---

**PLAINTIFF'S ORIGINAL COMPLAINT**

---

TO THE HONORABLE JUDGE:

Plaintiff Cassie Benham files this her Original Complaint and Jury Demand complaining of Defendants and for cause of action would show this Court as follows:

## I.
## PARTIES

1.    Plaintiff Cassie Benham is an individual residing in Lubbock, Lubbock County, Texas.

2.    Defendant Bayer Corporation is, and at all times relevant was, a corporation

organized under the laws of the State of Indiana with its headquarters and principal place of business at 100 Bayer Road, Pittsburgh, Pennsylvania 15205. At all times relevant, Defendant Bayer Corporation was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive YAZ®. This Defendant can be served with citation by serving its registered agent Corporation Service Company d/b/a CAC-Lawyers Incorporating Service Company at 211 East 7th Street, #620, Austin, Texas 78701.

3.      Defendant Bayer Healthcare LLC, is, and at times relevant was, a limited liability corporation organized under the laws of the State of Delaware with its headquarters and principal place of business at 100 Bayer Road, Pittsburgh, Pennsylvania 15202. At all times relevant, Defendant Bayer Healthcare, LLC was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive, Defendant Bayer Healthcare LLC is wholly owned by Defendant Bayer Corporation. This Defendant can be served with citation by serving its registered agent Corporation Service Company d/b/a CSC- Lawyers Incorporating Service Company at 211 East 7th Street, #620, Austin, Texas 78701.

4.      Defendant Bayer Pharmaceuticals Corporation is, and at times relevant was, a corporation organized under the laws of the State of Delaware with its headquarters and

principal place of business at 1400 Morgan Lane, West Haven, Connecticut. At all times relevant, Defendant Bayer Pharmaceuticals Corporation was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive Yaz®. As of January 1, 2008, Defendant Defendants Berlex Laboratories, Inc. and Berlex, Inc. were integrated into Defendant Bayer Pharmaceuticals Corporation was merged into Defendant Bayer Healthcare Pharmaceuticals Inc.

5.  Defendant Bayer Healthcare Pharmaceuticals Inc., is and at times relevant was, a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 340 Changebridge Road, P.O. Box 1000, Montville, New Jersey 070451000. Defendant Bayer Healthcare Pharmaceuticals Inc. was fonnerly known as Berlex, Inc., which was formerly known as Berlex Laboratories, Inc. At all times relevant, Defendant Bayer Healthcare Pharmaceuticals Inc. was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive Yaz®. Defendant Bayer Healthcare Pharmaceuticals Inc. Is the holder of the approved New Drug Application ("NDA") for Yaz®. Defendant Bayer Healthcare Pharmaceuticals Inc. Is the holder of the approved New Drug Application ("NDA") for Yasmin®. This Defendant can be served with citation by serving its registered

agent Bayer Healthcare Pharmaceuticals, Inc.

6.      Defendants Berlex Laboratories, Inc. and Berlex, Inc. are, and at all times relevant were, foreign corporations with their headquarters and principal places of business at Montville, New Jersey and with and with post office addresses of P.O. Box 1000, Montville, New Jersey, 07045 and places of business located at 6 West Pelt Road, Wayne, New Jersey 07470.

7.      Defendants Berlex Laboratories, Inc. and Berlex, Inc. were integrated into Bayer HealthCare AG and operate as an integrated specialty pharmaceuticals business under the new name, Defendant Bayer Healthcare Pharmaceuticals, Inc.

8.      Defendant Bayer Schering Pharma AG, formerly known as Schering AG, is a pharmaceutical company that is organized and existing under the laws of the federal Republic of Germany, having a principal place of business at Mlillerstrasse 178, 13353 Berlin, Germany.  Defendant Bayer Schering Pharma AG is a corporate successor to Schering AG. Schering AG was renamed Bayer Schering Pharma AG effective December 29, 2006. Defendant Bayer Schering Pharma AG's headquarters and principal place of business in the United States is located at 100 Bayer Road, Pittsburgh, Pennsylvania, 15205.

9.      Defendant Bayer AG is a German chemical and pharmaceutical company that is headquartered in Leverkusen, North Rhine-Westphalia, Germany. Defendant Bayer AG is the third largest pharmaceutical company in the world. Defendant Bayer AG is the parent/holding company of all other named Defendants. Defendant Bayer AG's headquarters

and principal place of business in the Untied States is located at 100 Bayer Road, Pittsburgh, Pennsylvania, 15205.

10.     Defendants Bayer Corporation, Bayer Healthcare, LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals, Inc., f/k/a Berlex Laboratories, Inc. f/k/a Berlex, Inc. and Bayer Schering Pharma AG, f/k/a Schering AG, shall be referred to herein individually by name or jointly as "Defendants."

11.     At all time alleged herein, Defendants include and included any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and organizational units of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

12.     At all times herein mentioned, each of the Defendants was the agent, servant, partner, predecessors in interest, aider and abettor, co-conspirator and joint venturer of each of the remaining Defendants herein and was at all times operating and acting with the purpose and scope of said agency, service, employment, partnership, conspiracy and joint venture.

13.     At all times relevant, Defendants were engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce throughout the United States, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive Yaz®.

## II.
## JURISDICTION AND VENUE

14.     This court has jurisdiction over the subject matter of this case because there is complete diversity of citizenship and the amount in controversy exceeds $75,000.00 exclusive of interest and costs. Plaintiff further pleads that this Court has jurisdiction over this action because the named Defendants were engaged in a business enterprise or commercial activity within the State of Texas, and the facts giving rise to this action occurred in whole or in part within the State of Texas.

15.     Venue is proper for the reason that Plaintiff is a resident of Lubbock County, that the prescription medication was dispensed to Plaintiff in Lubbock County, which is in the Northern District of Texas.

## III.
## FACTUAL BACKGROUND

16.     Plaintiff brings this case against Defendants for damages associated with Plaintiff's ingestion of the pharmaceutical drug Yaz® (ethinyl estradiol and drospirenone), an oral contraceptive designed, sold, manufactured, marketed, and distributed by Defendants. Specifically, Plaintiff suffered various injuries, serious physical pain and suffering, medical and hospital expenses, loss of wages and associated economic damages as a direct result of Plaintiff's use of Yaz®. These injuries are continuing in nature as set forth herein.

## PRODUCT HISTORY

17.    Yaz® and Yasmin® are birth control pills manufactured and marketed by Defendants. They are combination oral contraceptives, or "COCs," meaning that they contain an estrogen component and a progestin component. Together, these steroidal components work in COCs to suppress ovulation, fertilization, and implantation and thus prevent pregnancy.

18.    Yasmin® received FDA approval first in 2001. It is a combination of drospirenone, a progestin, and ethinyl estradiol, an estrogen. Combination birth control pills are referred to as combined hormonal oral contraceptives.

19.    Each tablet of Yasmin® contains a combination of 3 mg of the progestin, drospirenone, and 0.03 mg of the estrogen, ethinyl estadiol.

20.    Yaz® received approval from the FDA in 2006 and is essentially the same as Yasmin®, with the only difference being a slightly smaller amount of ethinyl estradiol.

21.    Yasmin® and Yaz® were approved by the Food and Drug Administration for marketing in 2001 and 2006 respectively.

22.    Yasmin® and Yaz® contain a "Fourth Generation" progestin, drospirenone.

23.    The estrogen component in Yasmin® and Yaz® is known as ethinyl estradiol.

24.    Yasmin® contains 0.03 milligrams of ethinyl estradiol, and Yaz® contains 0.02 milligrams of ethinyl estradiol.

25.    Both products contain 3 milligrams of drospirenone.

26.    Yasmin® and Yaz® are different from other combined hormonal birth control pills in that they contain drospirenone, a progestin that is unlike other progestins available in the United States as was never before marketed in the United States prior to its use in Yasmin®.

27.    Drospirenone was not marketed in the United States prior to its use in Yasmin®.

28.    Drospirenone is a diuretic and as such, creates unique risks as compared to other oral contraceptives.

29.    Upon information and belief, Defendants knew or should have known about these increased risks. Yet, despite the wealth of scientific information available, Defendants ignored these risks and still promoted, sold, advertise, and marketed the use of Yasmin® and Yaz® without sufficient warnings.

30.    Shortly after the introduction of combined oral contraceptives in the 1960's, doctors and researchers found that women using birth control pills had a higher risk of blood clots, heart attacks, and strokes than women not using the pill. As a result, the various brands of birth control pills were reformulated to reduce the amounts of estrogen. As the amounts of estrogen levels reduced, so too did the risk of blood clots, heart attacks, and strokes.

31.    During this time, new progestins were being developed, which became known as "second generation" progestins (e.g., lovenorgestrel). These second generation progestins, when combined with the lower amounts of the estrogen, ethyl estradiol, helped to reduce the

risk of blood clots, heart attacks, and strokes. The second generation progestins were considered safer for women to use.

32. During the 1990's, new "third generation" progestins were developed.

33. Unfortunately, these "third generation" progestins (e.g. getodene and desogestrel) have been associated with a greater risk of blood clots in the deep veins (deep vein thrombosis or "DVT") and lungs (pulmonary embolism or "PE"). As a result of this increased risk of blood clots, the FDA has required that products containing third generation progestins include a warning of the potentially increased risk of thrombosis.

34. Yasmin® and Yaz® contain the same estrogen component, ethinyl estradiol, that has been used in the lower dose birth control pills for decades. However, drospirenone is a new type of progestin and is considered a "fourth generation" progestin. No other birth control pills contain drospirenone.

35. One possible mechanism of action is that drospirenone causes and increase in potassium levels in the blood, which can lead to a condition known as hyperkalemia if the potassium levels become too high.

36. Hyperkalemia can cause heart rhythm disturbances, such as extrasystonlies, pauses, or bradycardia. If left untreated, hyperkalemia can be fatal.

37. If hyperkalemia disrupts the normal hearty rhythms, the flow of blood through the heart can be slowed to the point that it permits blood clots to form. Blood clots in the heart can then lead to heart attacks, or the clots can break off and travel to the lungs where

they can cause pulmonary embolism, or can travel to the brain causing stroke.

38.    Indeed, during the brief time that Yasmin® and Yaz® have been sold in the United States, hundreds of reports of injury and death have been submitted to the FDA in association with Defendants' products.

39.    In April 2002, the British Medical Journal reported that the Dutch College of General Practitioners recommended that older second generation birth control pills be prescribed in lieu of Yasmin® as a result of 40 cases of venous thrombosis among women taking Yasmin.

40.    In February 2003, a paper entitled *Thromboembolism Associated With the New Contraceptive Yasmin* was published in the British Medical Journal detailing a Netherlands Pharmacovigilance Centre report of five additional reports of thromboembolism where Yasmin® was suspected as the cause, including two deaths.

41.    In fact, in less that a five-year period, from the first quarter of 2004 through the third quarter of 2008, over 50 reports of death among users of Yasmin® and Yaz® have been filed with the FDA.

42.    These reports include deaths associated with cardiac arrhythmia, cardiac arrest, intracardiac thrombus, pulmonary embolism, and stroke in women in their child bearing years.

43.    Some deaths reported occurred in women as young as 17 years old.

44.    Significantly, reports of elevated potassium levels are frequently included

among the symptoms of those suffering death while using Yasmin® or Yaz®.

**Over-Promotion of Yasmin® and Yaz®**

45.     Defendants market Yasmin® and Yaz® as providing the same efficacy as other birth control pills in preventing pregnancy, but with additional benefits.

46.     However, because Yasmin® and Yaz® contain the forth generation progestin drospirenone, they present additional health risks not associated with other birth control pills.

47.     For example, prior to its sale to Defendant Bayer in 2006, Defendant Berlex Laboratories promoted Yasmin's fourth generation progestin, drospirenone, by stating, "Ask about Yasmin, and the difference a little chemistry can make."

48.     In response, on July 10, 2003, the FDA objected to the characterization that drospirenone was a benefit compared to the progestin used in other combined oral contraceptives, and issued a warning letter stating, "FDA is not aware of substantial evidence of substantial clinical experience demonstrating that Yasmin is superior to other COC's or that the drospirenone in Yasmin is clinically beneficial. On the contrary, FDA is aware of the added clinical risks associated with drospirenone [.]"

49.     The FDA's warning letter continued by stating that the advertisement failed "to communicate that the potential to increase potassium is a risk" or that "increased serum potassium can be dangerous."

50.     More recently, Defendants advertised that Yaz® was indicated for treatment of premenstrual syndrome or "PMS," as opposed to the less serious condition of premenstrual

dysphoric disorder of "PMDD."

51.     Defendants also advertised that Yaz® contained the added benefit of preventing or reducing acne.

52.     In response, on October 3, 2008, the FDA issued another warning letter to Defendant Bayer for the misleading advertisement, reiterating that the marketing was misleading because it promoted Yaz® for medical conditions beyond the limits of the FDA approval, and adding that "Yaz® has additional risks because it contains the progestin, drospirenone ... which can lead to hyperkalemia in high risk patients, which may result in potentially serious heart and health problems."

53.     The FDA further warned in its October 3, 2008 letter that Yaz® does not result in completely clear skin" and that Defendants' TV ads misleadingly overstate the efficacy of the drug."

54.     Indeed, the FDA felt Defendants' overpromotion of Yaz® was so severe that it required Bayer to run new TV advertisements to correct the previous misleading Yaz® advertisements regarding acne and premenstrual syndrome.  As late as 2009, Defendants were still being warned regarding its deficient online advertising.

55.     Bayer ultimately agreed to spend at least $20 million on corrective TV advertisements and to submit all Yaz® advertisements to the FDA for advanced screening for the next six years.

**Plaintiff's Use of Yaz® and Resulting Injuries**

56.     In April of 2009, Cassie Benham sought treatment from her physician for among other things, birth control and/or contraception, premenstrual disorder and/or acne. As a result of Defendants' claims regarding the effectiveness and safety of Yaz® for these specific ailments, Plaintiff Cassie Benham's medical provider prescribed and Cassie Benham began using Yaz® in April, 2009. On or about April 27, 2009, Cassie Benham received samples of Yaz® and subsequently began using Yaz® as prescribed. Cassie Benham used Yaz® until approximately September 11, 2009 when she suffered deep vein thrombosis (DVT) and had to be hospitalized for same. She now has to take blood thinners.

57.     As a direct and proximate result of using Yaz®, Cassie Benham suffered the injuries described above.

58.     Prior to Plaintiffs use of Yaz®, Defendants knew or should have known that use of Yaz® created a higher risk of deep vein thrombosis (DVT) than other oral contraceptives on the market, including but not limited to second generation oral contraceptives, and that, when taken as directed, such use was unreasonably dangerous to consumers.

59.     Therefore, at the time Cassie Benham used Yaz®, Defendants knew or should have known that the use of Yaz® created an increased risk to consumers of serious personal injury, including deep vein thrombosis, pulmonary embolism, heart attacks, stroke, and even death.

60.    Despite the fact that Defendants knew or should have known of the serious health risks associated with the use of Yaz®, Defendants failed to timely, adequately and/or properly warn Cassie Benham and/or her health care providers of said serious risks before she used the product.

61.    Had Cassie Benham and/or her health care providers known the risks and dangers associated with Yaz®, she would not have used Yaz® and would not have suffered deep vein

thrombosis (DVT) on or around September 11, 2009.

62.    As a direct and proximate result of her use of Yaz®, Plaintiff Cassie Benham suffered physical injury, including but not limited to, conscious pain and suffering, as a result of her deep vein thrombosis.

63.    As a direct and proximate result of her use of Yaz®, Plaintiff Cassie Benham has suffered and will continue to suffer pecuniary losses.

## IV.
## TOLLING OF APPLICABLE STATUTES OF LIMITATION

64.    Paragraphs 1 through 63 are incorporated here for all purposes.

65.    Because of the self-concealing nature of Defendants' actions and, in part, of their active concealment of their wrongdoing, as described herein, Plaintiff asserts the tolling of any applicable statutes of limitation affecting the Plaintiff s claim pursuant to fraudulent concealment, estoppel, and/or the discovery rule.

# V.
## CAUSES OF ACTION

### Count 1:
### Strict Liability

66.     Paragraphs 1 through 65 are incorporated here for all purposes and further alleges on information and belief as follows.

67.     At the time of Plaintiffs injury, Defendants' pharmaceutical Yaz® was defective and unreasonably dangerous to foreseeable consumers, including Plaintiff.

68.     The Yaz® used by Plaintiff was in the same or substantially similar condition as it was when it left the possession of Defendants.

69.     Plaintiff did not misuse or materially alter the Yaz®.

70.     Defendants are strictly liable for Plaintiff s injury in the following ways:

    a.     The pharmaceutical Yaz® as designed, manufactured, sold and/or supplied by the Defendants, was defectively designed and placed into the stream of commerce by Defendants in a defective and unreasonably dangerous condition;

    b.     Defendants failed to properly market, design, manufacture, distribute, supply and sell Yaz®.

    c.     Defendants failed to warn and/or place adequate warnings and instructions on Yaz®.

    d.     Defendants failed to adequately test Yaz®.

    e.     Defendants failed to provide timely and adequate post-marketing

warnings and instructions after they knew of the risk of injury associated with the use of Yaz®; and

f.  A feasible, safer alternative design existed that was capable of preventing Plaintiffs injury.

71.  Defendants' actions and omissions were the direct and proximate cause of Plaintiffs injury.

72.  Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the lives of the consumers and users of their products, including Plaintiff, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public. Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public. Defendants' outrageous conduct warrants an award of punitive damages.

### Count 2:
### Negligence and Gross Negligence

73.  Paragraphs I through 72 are incorporated here for all purposes.

74.  Defendants and their agents, servants, and/or employees, engaged in several acts and omissions constituting negligence and gross negligence and such acts and omissions, among others, are as follows:

a.  In failing to provide adequate warnings to physicians and their patients of the risk of serious injury to people taking Yaz®, including but not limited to cardiovascular and thrombotic events such as heart attack and stroke, and of precautionary measures required to avoid such risks, especially given the population who were known to be the actual consumers of the medication. To

the extent that Defendants provided such warnings and such warnings accompanied the units of Yaz® disseminated to Plaintiff and/or her physicians, pharmacists or other health care providers, and were approved by the FDA, Plaintiffs assert that Defendants, before or after pre-market approval or licensing Yaz®, withheld from or misrepresented to the FDA required information that was material and relevant to the performance of Yaz® and was causally related to the injuries and damages to Plaintiff.

b.     In failing to promptly and adequately investigate reports of cardiovascular and thrombotic events, such as heart attack and stroke, occurring in people taking Yaz®, and failing to promptly and adequately report evidence concerning these dangerous side effects of Yaz® to the FDA and prescribing physicians and other health care providers and/or to the general public.

c.     In failing to take other reasonable and necessary steps, relating to the research, testing and development of Yaz®, so as to provide a reasonable assurance that the product would not result in catastrophic cardiac, neurological, or other thrombotic injury to those who might take Yaz®.

d.     In failing to safely design the drug so that it would not result in catastrophic cardiac, neurological, or other thrombotic injury to those who might take Yaz®.

75.     Defendants committed the acts and omissions described above with actual and subjective awareness that Yaz® caused an elevated risk of cardiovascular and thrombotic events, such as heart attack, stroke, infarction and other adverse effects in users of Yaz®. This risk is extreme when one considers the prevalence of Yaz® and the large numbers of users, the risk factors known to be present in that population, the probability of potential harm to users, and the magnitude of the harm. Despite Defendants' awareness of this risk, Defendants proceeded to market, manufacture, distribute, supply, and sell Yaz® with a conscious indifference to the rights, safety, or welfare of others. Such acts and omissions on the part of Defendants rise to the level of gross negligence.

76.     The acts and omissions constituting negligence and gross negligence described herein were each a proximate cause of the occurrence in question and the injuries and damages suffered by Plaintiff.

## Count 3:
## Breach of Warranty

77.     Paragraphs 1 through 76 are incorporated herein for all purposes.

78.     Defendants expressly and/or impliedly warranted to the public generally, specifically including Plaintiff that the product in question was of merchantable quality, and was safe and fit for the purposes intended when used under ordinary conditions and in an ordinary manner in accordance with the recommended dosages according to Defendants.

79.     Defendants breached such warranties by selling Yaz® when Yaz® was not safe and not fit for the purposes intended in that it presented unreasonable and substantial risks of cardiovascular events or disorders that were not disclosed to the general public, and specifically not to Plaintiff.

80.     Plaintiff reasonably relied on Defendants' representations and/or misrepresentations to her detriment.

81.     The defects of the product in question and the breaches of warranties, both express and implied, described herein, were each a producing cause of the occurrences in question, the injuries and damages suffered by Plaintiff.

## Count 4:
## Negligent Misrepresentation and/or Fraud

82.     Paragraphs 1 through 81 are incorporated herein for all purposes.

83.     Defendants are the manufacturers, designers, distributors, sellers or suppliers of Yaz® and made representations to Plaintiff and her physician regarding the character or quality of Yaz® for guidance in their decision to select Yaz®.

84.     Specifically, Defendant represented that their product was just as safe or safer, and just as effective or more effective, than other birth control products on the market.

85.     Defendants' representations regarding the character or quality of Yaz® were untrue.

86.     Defendants had actual knowledge based upon studies, published reports and clinical experience that its product Yaz® created an unreasonable risk of serious bodily injury and death to consumer, or should have known such information.

87.     Defendants negligently and/or intentionally misrepresented or omitted this information in its product labeling, promotions and advertisements and instead labeled, promoted and advertised its product as safer and more effective than other types of oral contraceptives in order to avoid losses and sustain profits in its sales to consumers.

88.     In supplying the false information, Defendants failed to exercise reasonable care or competence in obtaining or communicating information to Plaintiff and her physician.

89.     Plaintiff Cassie Benham and her physician reasonably relied to her detriment upon Defendants' misrepresentations and/or omissions in its labeling, advertisements, and

promotions concerning the serious risks posed by the product. Plaintiff Cassie Benham

reasonably relied upon Defendants' representations to her and/or her health care providers

that Yaz® was safer than other types of oral contraceptives for human consumption and/or

use and that Defendants' labeling, advertisements and promotions fully described all known

risks of the product.

90.     As a direct and proximate result of Defendants' negligent and/or intentional

misrepresentations or omissions, Plaintiff Cassie Benham suffered personal injury, economic

and non-economic damages, and will continue to suffer such harm, damages, and economic

loss in the future.

91.     Defendants' actions and omissions as identified in this Complaint demonstrate

malicious actions, aggravated or egregious fraud, and/or intentional disregard of Plaintiffs

rights os as to warrant the imposition of punitive damages.

## VI.
## DAMAGES

92.     Paragraphs 1 through 91 are incorporated herein for all purposes.

93.     As a result of these occurrences and the wrongful conduct of Defendants

Plaintiffs sustained substantial damages.

94.     As a result of this occurrence and Defendants' wrongful conduct, Cassie

Benham has sustained in the past, and will in reasonable probability, sustain in the future, a

loss of earnings and earning capacity.

95.     As a further result of this occurrence and Defendants' wrongful conduct, Cassie



Benham has sustained in the past, and will in reasonable probability, sustain in the future: physical pain and mental anguish, significant physical and mental impairment, and physical disfigurement.

96.    As a further result of this occurrence and Defendants' wrongful conduct, Cassie Benham has incurred in the past, and will in reasonable probability, incur in the future, medical expenses. Such expenses are and will be reasonably necessary for the injuries sustained, and are and will be reasonable and customary in the community in which they were and will be incurred.

## VII.
## EXEMPLARY DAMAGES

97.     Paragraphs 1 through 96 are incorporated herein for all purposes.

98.     Defendants acted with gross negligence as the term is defined at common law and in TEX. CIV. PRAC. & REM. CODE § 41.001. Accordingly, Defendants should be assessed exemplary damages, payable to Plaintiffs in an amount to be determined by the Court and jury, in accordance with the provisions of Chapter 41, of the Texas Civil Practice and Remedies Code.

## VIII.
## PRE-AND POST-JUDGMENT INTEREST

99.     Paragraphs 1 through 98 are incorporated herein for all purposes.

100.    Plaintiff specifically pleads for any and all prejudgment and post-judgment interest.

## IX.
## JURY DEMAND AND CONDITIONS PRECEDENT

101.   Plaintiff demands a trial by jury on all issues.

102.   Plaintiff has satisfied all conditions precedent to the maintenance of the action and to the relief sought herein.

### PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendants be cited to appear and answer and that, upon trial hereof, Plaintiff have judgment of the Court against Defendants as follows:

(a)   for actual damages, in a total amount of money substantially in excess of the minimum jurisdictional limit of this Court;

(b)   for exemplary damages;

(c)   for prejudgment and post-judgment interest as allowed by law;

(d)   for all costs of court; and

(e)   for such other and further relief, both general and special, legal and equitable, to which they have shown or may show themselves justly entitled.

Respectfully submitted,

Robert L. Chaiken
State Bar No. 04057830
CHAIKEN & CHAIKEN, P.C.
13355 Noel Road, Suite 600
Dallas, Texas 75240
(214) 265-0250 telephone
(214) 265-1537 facsimile

ATTORNEYS FOR PLAINTIFF

JS 44 (TXND Rev. 2/10)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Cassie Benham | Bayer Corporation, Bayer Healthcare, LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals, Inc., Berlex Inc., Bayer Schering Pharma AG, Bayer AG |

*ORIGINAL*

| **(b)** County of Residence of First Listed Plaintiff   Lubbock County, TX | County of Residence of First Listed Defendant   Allegheny County, PA |
|---|---|
| (EXCEPT IN U.S. PLAINTIFF CASES) | (IN U.S. PLAINTIFF CASES ONLY) |
| | NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED. |

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Robert L. Chaiken, Chaiken & Chaiken, P.C., One Galleria Tower, 13355 Noel Road, Suite 600, Dallas, TX 75240 (214) 265-0250

*RECEIVED   APR 13 2011   CLERK, U.S. DISTRICT COURT   NORTHERN DISTRICT OF TEXAS*

Attorneys (If Known)

**3-11CV0753-N**

## II. BASIS OF JURISDICTION  (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☐ 3  Federal Question (U.S. Government Not a Party)
- ☐ 2  U.S. Government Defendant
- ☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT  (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | Liability | | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN  (Place an "X" in One Box Only)

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify)    ☐ 6 Multidistrict Litigation    ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 USC § 1332 - Diversity Statute
Brief description of cause:
Product Liability

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $   *over* 75,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S)   (See instructions)
PENDING OR CLOSED:

JUDGE _____   DOCKET NUMBER _____

DATE
04/13/2011

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

JS 44 Reverse (TXND Rev. 2/10)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.**   **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

    (b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

    (c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)."

**II.**   **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), Fed. R. Civ. P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers, or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress, or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.**   **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**   **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.**   **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.**   **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity**     Example     U.S. Civil Statute: 47 USC 553
                             Brief Description: Unauthorized reception of cable service

**VII.**   **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, Fed. R. Civ. P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand, such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**   **Related Cases.** This section of the JS 44 is used to reference cases that are related to this filing, if any. If a related case exists, whether pending or closed, insert the docket numbers and the corresponding judge names for such cases. A case is "related" to this filing if the case: (1) involves some or all of the same parties and is based on the same or similar claim; (2) involves the same property, transaction, or event; (3) involves substantially similar issues of law and fact; and/or (4) involves the same estate in a bankruptcy appeal.

**Date and Attorney Signature.** Date and sign the civil cover sheet.